**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Shelly M Lachcik, et al., | No. CV-15-02318-PHX-DGC |
| Plaintiffs, | **ORDER** |
| v. | |
| Maricopa County Board of Commissioners, et al., | |
| Defendants. | |

Plaintiffs Shelly Lachcik and Katherine Fox filed a complaint against Defendants Maricopa County Board of Supervisors ("MCBS"), Housing Authority of Maricopa County ("HAMC"), Gloria Munoz, Jenese Bojorquez, Marifel Saldana, Keith Quin, and Brad Carr (collectively, "Defendants"). Doc. 54. Plaintiffs seek declaratory, injunctive, and monetary relief for alleged violations of the Constitution and federal law. *Id.* Defendants have filed a motion for summary judgment. The motion is fully briefed (Docs. 87, 89, 91), and no party has requested oral argument. For the reasons set forth below, the Court will grant Defendants' motion.

**I.   Background.**

Defendant HAMC is a public housing authority created under state law and responsible for administering the Housing Choice Voucher Program in Maricopa County. Doc. 87 at 2. This federal program, commonly referred to as the Section 8 program, offers housing subsidies to low-income families who meet certain eligibility requirements

and comply with specified obligations. 24 C.F.R. § 982. Defendant MCBS, the five-member governing board for Maricopa County, is charged with overseeing HAMC. Doc. 87 at 2; Doc. 1 at 4. Defendants Gloria Munoz, Jenese Bojorquez, Keith Quin, and Marifel Saldana are employees of HAMC. Doc. 87 at 2. Defendant Munoz is the Executive Director, Defendant Bojorquez the supervisor of the Section 8 program, Defendant Quin a housing specialist, Defendant Saldana a customer service specialist, and Defendant Carr a volunteer hearing officer. *Id.*

Plaintiff Lachick is a former recipient of Section 8 housing assistance. *Id.*; Doc. 1 at 4. Plaintiff Fox is Lachick's mother. *Id.* In December 2012, Fox temporarily moved into Lachick's home. Doc. 88, ¶ 2; Doc. 90 at 1. In early 2013, Plaintiffs submitted a change report form to HAMC indicating this move. Doc. 88, ¶ 3; Doc. 90 at 1. Fox earned income in 2013 which she disclosed on her 2013 tax return. Doc. 88, ¶¶ 4-5; Doc. 90 at 1. Plaintiffs concede that they were aware of their duty under the Section 8 program to disclose this income to HAMC. Doc. 88, ¶ 7; Doc. 90 at 1. Plaintiffs did not disclose Fox's income (Doc. 88, ¶ 8; Doc. 90 at 1-2), and Lachick alleges that she had no personal knowledge of Fox's income at the time. Doc. 90 at 2. Plaintiffs submitted a 2014 recertification packet in late 2013. Doc. 88-1 at 23. In response, Defendants sent a letter to Plaintiffs on October 25, 2014, requesting a copy of Fox's 2013 tax return and 2014 self-employment worksheet. *Id.* at 42. Plaintiffs submitted these additional documents, although there is some dispute as to whether they were submitted immediately after the October 2014 request or only after a November 2014 follow-up request from Defendants. *Id.* at 23; Doc. 90 at 1-2.

Following receipt of these documents, Defendants recalculated the benefits to which Plaintiffs were entitled under the Section 8 program and sent a Notification of Debt and Proposed Termination to Plaintiffs dated May 8, 2015. Doc. 88, ¶ 11; Doc. 88-1 at 49. The notification provided: "You failed to report timely, and properly, Kathy Fox's self-employment income for 2013. Failure to report all household income causes the federal government to pay too much for rental subsidy and is considered fraud. One

of your obligations as a participant on the Housing Choice Voucher Program is to report changes in household income in a timely manner." Doc 88-1 at 49. The notification informed Plaintiffs that they were required to pay the balance of $1,718 by June 8, 2015 or their housing assistance would be terminated. *Id.* It also informed Plaintiffs of their right to reply to the notification, to examine documents in the possession of HAMC directly related to the notification, and to have an informal hearing on the matter. *Id.* Plaintiffs do not dispute that they received this notification, but allege that the debt calculation was inaccurate and that the notification did not disclose to whom the debt belonged or that Plaintiffs had violated a family obligation under the Section 8 program. Doc. 90 at 2.

On May 18, 2015 Plaintiffs requested an informal hearing. Defendants mailed Plaintiffs a letter on May, 28 2016, informing them that the hearing was scheduled for June 25, 2015 at 3:00 p.m. and providing them with information about hearing policies. Doc. 88, ¶ 14; Doc. 88-1 at 54; Doc. 90 at 1. The letter said: "You have the right to view any documents or evidence in the possession of [HAMC] upon which the proposed action is based at your own expense. Request for such documents or evidence must be received no later than one business day prior to the hearing date and the request must be submitted in writing." Doc. 88-1 at 54. Plaintiffs assert that they "requested the documents relevant to the hearing prior to the end of the business day on June 24th, 2015[,]" in compliance with the procedures. Doc. 90 at 5.[1]

Both Plaintiffs appeared and gave testimony at the informal hearing on June 25. Doc. 88, ¶ 20; Doc. 90 at 1. On July 4, 2015, Defendant Carr – the hearing officer – issued a written decision upholding the termination of Plaintiffs' housing assistance. Doc. 88, ¶ 21; Doc. 88-1 at 70-72; Doc. 90 at 1. Plaintiffs do not dispute that "[t]he

---

[1] An explanation of informal hearing procedures provided to Plaintiffs stated that "[r]equests for documents or evidence must be received by HAMC no later than 28 hours or two business days before the scheduled hearing date," an apparent inconsistency with the deadline in the letter. Doc. 88-1 at 56. The deadline contained in the explanation can be interpreted to apply to requests for *copies* of documents from the relevant HAMC file. *See id.* In any event, Plaintiffs were required to seek review of documents in HAMC's possession at least one business day before their scheduled hearing.

- 3 -

documentary evidence relied upon by the hearing officer consisted of documents that had been sent to Plaintiffs before the hearing date, signed by Plaintiffs before the hearing date, or submitted by Plaintiffs before the hearing date." Doc. 88, ¶ 23; Doc. 90 at 1. Plaintiffs' benefits were terminated after Defendant Carr's decision. Doc. 87 at 4.

**II.     Legal Standard.**

A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is also appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**III.    Analysis.**

Plaintiffs bring several claims alleging violations of their Fourteenth Amendment due process rights and Section 8 of the United States Housing Act of 1937 (specifically 42 U.S.C. 1437f) and related regulations. Doc. 54 at 3-4. Pro se Plaintiffs' summary judgment briefing is sparse and confusing (Docs. 89, 90), but the Court has examined it carefully, along with Plaintiffs' third amended complaint (Doc. 54), in attempting to make out their arguments. Plaintiffs' complaint also confuses the legal bases of their claims, but it appears that the majority of the claims are brought under 42 U.S.C. § 1983. Doc. 54 at 4-11. "To state a claim under § 1983, a plaintiff must both (1) allege the deprivation of a right secured by the federal Constitution or statutory law, and (2) allege

that the deprivation was committed by a person acting under color of state law." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006).

Although Plaintiffs clearly feel aggrieved for having lost their Section 8 housing subsidy, the Court concludes that they have failed to present evidence of, or create a triable issue of fact on, any violation of their constitutional or statutory rights. They identify various defects in Defendants' actions, such as a denial of last-minute access to HAMC's file, erroneous debt calculations, and the fact that one of them allegedly was excluded from the hearing room for a short period, but they have identified no violations that rise to the level of a denial of due process. Nor have they identified violations of any actionable statutory rights. They assert that Defendants violated some regulations, but failed to identify any cause of action for those violations.[2]

### A.  Due Process Violations.

Plaintiffs contend that they were not given "adequate notice as to the grounds for termination, with enough specificity so that [they could] prepare a defense." Doc. 54 at 5. Plaintiffs also contend that they were denied the opportunity to review Defendants' file related to their case. *Id.* at 7. Additionally, Plaintiffs argue that Plaintiff Fox was refused access to the hearing room, resulting in her inability to cross-examine witnesses whose testimony was relied on by Defendant Carr. *Id.* at 8. Finally, Plaintiffs argue that Defendant Carr failed to consider Plaintiffs' testimony and relied on evidence that either should not have been or was not admitted at the informal hearing. *Id.* at 9.

"A procedural due process claim has two distinct elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." *Brewster v. Board of Educ.*, 149 F.3d 971, 982 (9th Cir. 1998). As Defendants concede, participation in a public housing program is a property interest protected by due process requirements. Doc. 87 at 7 (citing *Woods v. Willis*, 515 F.

---

[2] Plaintiffs attempt to bring a claim under 42 U.S.C. § 1985(3). Doc. 54 at 3. To bring such a claim, Plaintiffs must allege and prove a conspiracy. *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992). Because Plaintiffs do not allege or present evidence of any conspiracy, they cannot bring a claim under § 1985.

- 5 -

App'x 471, 476 (6th Cir. 2013)); *see also Ressler v. Pierce*, 692 F.2d 1212, 1215-16 (9th Cir. 1982) (finding that plaintiff had "a constitutionally protected 'property' interest in Section 8 benefits by virtue of her membership in a class of individuals whom the Section 8 program was intended to benefit."); *Burgess v. Hous. Auth. of Alameda Cty.*, No. C01-04098 MJJ, 2006 WL 7347315, at *11 (N.D. Cal. Dec. 30, 2006) (finding that the plaintiffs had "a protected interest in their continued receipt of Section 8 benefits.").

While the scope of procedural due process protections varies depending on the circumstances, the necessary and "fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). The Supreme Court has established three factors for determining the process that is due in a particular circumstance:

> [1] First, the private interest that will be affected by the official action;
>
> [2] second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and
>
> [3] finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335.

When considering the case of an individual threatened with termination of welfare benefits, the Supreme Court concluded that "[t]he extent to which procedural due process must be afforded the recipient is influenced by the extent to which he may be condemned to suffer grievous loss, and depends upon whether the recipient's interest in avoiding that loss outweighs the governmental interest in summary adjudication." *Goldberg v. Kelly*, 397 U.S. 254, 262-63 (1970) (internal quotation marks and citations omitted); *Ressler*, 692 F.2d at 1217 (finding that courts must focus on the weight of the property interest to determine the amount of process due). An individual's interest is given greater weight if he is already receiving benefits and is threatened with termination or reduction in those

benefits. *Ressler*, 692 F.2d at 1217; *see also Richardson v. Perales*, 402 U.S. 389, 406-07 (1971). The Court acknowledges that termination of housing subsidies for low-income individuals can have devastating effects on the basic welfare of those individuals, requiring effective process to ensure that the protected property right is not wrongfully withdrawn.

Courts have identified five procedural requirements for termination processes employed by housing authorities: "(1) timely notice from the housing authority stating the basis for the proposed termination, (2) an opportunity by the tenant to confront and cross-examine each witness relied on by the housing authority, (3) the right of the tenant to be represented by counsel, (4) a decision, based solely on evidence adduced at the hearing, in which the reasons for the decision are set forth, and (5) an impartial decision maker." *Clark v. Alexander*, 85 F.3d 146, 150 (4th Cir. 1996) (citing *Goldberg*, 397 U.S. at 266-71); *see also Mendoza v. Frenchman Hill Apartments Ltd. P'ship*, No. CV-03-494-RHW, 2005 WL 6581642, at *9 (E.D. Wash. Jan. 20, 2005). Considering the factors identified by the Supreme Court in *Mathews* and *Goldberg*, the Court concludes that these procedures were required for termination of Plaintiffs' Section 8 benefits. Plaintiffs do not contend that some other procedural requirements were necessary. Nor do Plaintiffs claim that Defendant Carr was not an impartial decision maker or that they were denied the right to be represented by counsel. The inquiry thus focuses on notice, opportunity to participate in the hearing and cross-examine witnesses, and a decision based solely on evidence adduced at the hearing.

Defendants assert that Plaintiffs were provided sufficient notice of the grounds for termination of their benefits. *Id.* at 6. The Court agrees. Defendants mailed Plaintiffs a Notification of Debt and Proposed Termination on May 8, 2015. Doc. 88-1 at 49. The notification informed Plaintiffs that they had "failed to report timely, and properly, Kathy Fox's self employment income for 2013." *Id.* The notification explained that the failure to report all income causes the federal government to pay too much for rental subsidies and violates "your obligations as a participant [of] the Housing Choice Voucher Program

1  [] to report changes in household income in a timely manner." *Id.* The notification
2  identified 24 C.F.R. § 982.552(a) as the provision which allowed for termination of
3  Plaintiffs' benefits, and quoted the relevant language. *Id.* The notification also informed
4  Plaintiffs that they could repay the government's $1,718 overpayment by June 8, 2015 to
5  avoid termination of their subsidies. *Id.* Finally, the notification informed Plaintiffs that
6  they had a right to an informal hearing to challenge the termination decision, identified
7  relevant procedures for the hearing, and explained that Plaintiffs had "the right to
8  examine those documents in the possession of HAMC that are directly related to this
9  Notice Termination." *Id.* In short, Plaintiffs received an individual statement describing
10 what benefits would be terminated and when, the factual and legal grounds for the
11 termination, and Plaintiffs' available remedies. This notice satisfied procedural due
12 process requirements.

13 Defendants contend that Plaintiffs were given an opportunity to present evidence
14 and cross-examine Defendants' witness at the hearing. Doc. 87 at 9. It is undisputed that
15 both Plaintiffs testified at the hearing (Doc. 88, ¶ 20; Doc. 90 at 1) and that Plaintiff
16 Lachcik, the designated head of household, was permitted to cross-examine Defendant
17 Quin, the only witness called by Defendants (Doc. 87 at 9; Doc. 88-1 at 13). Thus,
18 Plaintiffs had the opportunity to present their own evidence and contest evidence
19 presented by Defendants – a fair opportunity to be heard before their housing subsidy was
20 terminated.

21 Defendants argue that Defendant Carr "issued a written decision stating the
22 reasons for his decision, and this written decision was delivered to Plaintiffs." Doc. 87 at
23 10. The decision by Defendant Carr identifies the evidence on which he relied and the
24 reasoning behind his conclusions. Doc. 88-1 at 70-72. The decision shows that Carr
25 considered Plaintiffs' testimony and documents they presented. *Id.* at 71. He identified
26 "conflicting documentation of income for Fox for 2013" and Plaintiffs' "failure to repay
27 the overpaid assistance amount" as two of several grounds for his decision. *Id.* at 71-72.
28 Plaintiffs argue that these grounds were not discussed at the hearing, and thus should not

have been relied upon by Carr.  The Court disagrees.  The conflicting documentation of income appears to refer to a letter from Christopher Fox, Plaintiff Fox's husband, stating that the income received by Plaintiff Fox in 2013 was combined income.  *Id.* at 71.  Plaintiffs presented this letter at the hearing.  *Id.*  Additionally, even if Plaintiffs' debt was not discussed at the hearing, Plaintiffs' were notified of the debt in the original notification and had an opportunity to raise it at the hearing.  *Id.* at 49.

There appears to be no dispute that Plaintiffs had the opportunity to address all of the evidence adduced at the hearing.  As noted above, Plaintiffs concede that "[t]he documentary evidence relied upon by the hearing officer consisted of documents that had been sent to Plaintiffs before the hearing date, signed by Plaintiffs before the hearing date, or submitted by Plaintiffs before the hearing date."  Doc. 88, ¶ 23; Doc. 90 at 1.

The parties disagree on whether Plaintiffs were given access to the HAMC file.  The Court notes that this is not a separate requirement of the five procedural due process requirements identified above.  And Plaintiffs did have an opportunity to address all evidence presented at their hearing.  Plaintiffs nevertheless complain that they were not granted access to their HAMC file.  Even if true, Plaintiffs have not shown that this complaint rises to the level of a due process violation.

The original notification informed Plaintiffs of their right to review any documents in the possession of HAMC related to their case.  Doc. 88-1 at 49.  After Plaintiffs requested a hearing, Defendants mailed Plaintiffs a letter on May 28, 2015 informing them that their hearing was scheduled for June 25, 2015 at 3:00 p.m.  *Id.* at 54.  This letter again informed Plaintiffs that they had a right to view any relevant documents or records in the possession of HAMC, but that any request to review such documents must be in writing and "received no later than one business day prior to the hearing date[.]"  *Id.*

In their depositions, Plaintiffs testified that they arrived at HAMC "[n]ot much before, but definitely before" the end of business on June 24, 2015, the day before the hearing.  *Id.* at 12; *see also id.* at 25; Doc. 90 at 5.  Plaintiffs allege that they submitted a request to review their file, but that Defendants refused to place a time-stamp on the

request because it was submitted less than 24 hours before the hearing. *Id*. at 12. Plaintiffs did provide a letter from Chris Fox to HAMC on June 24, which Defendants time-stamped at 5:02 p.m. Doc. 90 at 5. Plaintiffs have provided no documentation of their file-review request. Doc. 88-1 at 12.

More importantly, Plaintiffs have identified no documents or evidence in the file that they were deprived of presenting at the next day's hearing. Plaintiffs have failed to show that they were denied due process by being unable to review their file the evening before the hearing.

Taken as a whole, the Court finds that the hearing procedures satisfied due process. They met the five requirements identified above and gave Plaintiffs an "opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews*, 424 U.S. at 333. The Court will grant summary judgment for Defendants on this claim.[3]

### B.     Erroneous Debt Calculations.

Counts III and IV of the amended complaint allege that Defendants Quin and Bojorquez erroneously calculated the amount of assistance overpaid to Plaintiffs. Doc. 54 at 5-6. Plaintiffs contend that Quin originally miscalculated Plaintiffs' debt by failing to apply Plaintiffs' reported wages and the correct fair market rental rate. *Id.* at 5. Plaintiffs allege that Bojorquez and HAMC recalculated Plaintiffs' debt against on August 17, 2105. *Id.* at 6. Plaintiffs argue that this second calculation was incorrect because Bojorquez applied the wrong payment standard. *Id*. Plaintiffs also allege that they were never notified of this amended calculation, and that the amended debt

---

[3] Plaintiffs have attached documents to their summary judgement response showing that a HUD housing specialist recommended that Plaintiffs be given a second hearing. Doc. 89 at 10. HAMC responded to each of the concerns raised by the specialist and concluded that Plaintiffs had been afforded a proper hearing. *Id.* at 9, 11 (the pages are out of order in Plaintiffs' submission). Although the specialist's conclusion has given the Court pause, a careful review of each of Plaintiffs' complaints convinces the Court that defects in the process did not rise to the level of a constitutional denial of due process. Plaintiffs received notice of the grounds for termination, attended and participated in a hearing on those grounds, presented evidence in support of their position, and received a written decision from a hearing officer they do not characterize as biased. Plaintiffs clearly disagree with his decision, but that does not give rise to a due process violation.

1 statement does not identify to whom it belongs and is unsigned, requiring it to be
2 withdrawn from evidence. *Id*. Plaintiffs argue that both of these miscalculations render
3 Defendants' determination of Plaintiffs' debt invalid and defective, and violate Plaintiffs'
4 due process rights. *Id*.

Defendants do not dispute that Quin's initial debt computation was miscalculated as too low. Doc. 87 at 6. Defendants do dispute that the second debt statement was miscalculated, but argue that this dispute is immaterial because "there is no legal authority establishing that the improper calculation of debt owed to a public housing authority creates a right of action against the public housing authority, or that it can be grounds for a due process claim under § 1983." *Id*. This certainly appears to be true if, as here, there is no dispute that the debt was owed and the only disagreement concerns the correct amount. Plaintiffs do not claim that a correct calculation would have shown no debt or would have permitted them to pay it, or that they ever attempted to pay it (Doc. 54 at 6-7), and they have identified no statutory provision suggesting that they have a cause of action for an administrative miscalculation.

Nor have Plaintiffs sufficiently pled a due process violation from the debt miscalculation. As Defendants point out, Plaintiffs "solely dispute the amount of the debt [and] the way in which it was calculated[,]" but do not allege that they have "pursued any administrative remedies to have the calculation of the debt corrected." *Id.* at 7. What is more, because Plaintiffs do not state when or how they first learned of the recalculation of their debt, the Court cannot determine whether they were given notice and an opportunity to be heard with respect to the alleged errors (if that was required). The Court will grant summary judgment on this issue. *Celotex*, 477 U.S. at 322 (Summary judgment is also appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").

**C.     Statutory and Regulatory Violations.**

Finally, Plaintiffs contend that Defendants' actions violated 24 C.F.R. §§ 982.552, 982.554, 982.555, 966.56. *Id.* at 7-8. The Ninth Circuit has made clear, however, that "agency regulations cannot independently create rights enforceable through § 1983." *Save Our Valley v. Sound Transit*, 335 F.3d 932, 939 (9th Cir. 2003); *see also Nozzi v. Housing Authority of City of Los Angeles,* 425 Fed. App'x 539, 543 (9th Cir.2011) (finding that Section 8 regulations are not enforceable using § 1983); *Moore v. Hous. Auth. of the City of Los Angeles*, No. CV 15-4687-JFW(E), 2015 WL 9872270, at *8 (C.D. Cal. Dec. 21, 2015) (dismissing the plaintiffs' § 1983 claims based on alleged violations of federal regulations because § 1983 does not provide a remedy for violations of federal regulations).

Where a statute creates enforceable rights, a court may look to the implementing regulations to "interpret the scope of the right that Congress had conferred through the statute." *Save Our Valley*, 335 F.3d at 939. Courts may not look to the regulations, however, if "the alleged right does not appear explicitly in the statute." *Id.* at 940 (quoting *S. Camden Citizens in Action v. New Jersey Dep't. of Envtl. Prot.*, 274 F.3d 771, 783 (3d. Cir. 2001)). Plaintiffs allege that Defendants violated 42 U.S.C. § 1437f, but they do not identify any rights created under § 1437f. *See Hunter v. Underwood*, 362 F.3d 468, 478 (8th Cir. 2004) ("certain provisions of the Housing Act provide rights that are enforceable under § 1983. . . . It is incumbent on the plaintiff, however, to identify with particularity the right she claims in order for the court to determine whether a federal statute creates a private right."). What is more, Plaintiffs do not explain how Defendants' conduct violated this statutory provision.

Plaintiffs allege violations of 24 C.F.R. § 982.555. This section provides that "[t]he family must be given the opportunity to examine before the [local Public Housing Authority ("PHA")] hearing any PHA documents that are directly relevant to the hearing. . . . If the PHA does not make the document available for examination on request of the family, the PHA may not rely on the document at the hearing." 24 C.F.R.

§ 982.555(e)(2)(i). Section 982.555 also provides that "the family must be given the opportunity to present evidence, and may question any witnesses." 24 C.F.R. § 982.555(e)(5).

In addition to the fact that this regulation does not give rise to a cause of action, Plaintiffs have not alleged that they were denied access to documents "directly relevant" to the hearing. To the contrary, they acknowledge that they had access to all documents placed in evidence at the hearing. And they do not dispute that they were allowed to present evidence and question Defendant's only witness at the hearing.[4]

### D.   Arbitrary Hearing Decision.

Plaintiffs claim that Defendant Carr's decision was "unsupported by substantial evidence, procedurally defective, and arbitrary and capricious." Doc. 54 at 8. But Plaintiffs cite no authority that would allow the Court to review the merits of a decision by a state hearing officer. The Administrative Procedures Act allows federal courts to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . unsupported by substantial evidence[.]" 5 U.S.C. § 706. But this power is limited to review of actions and decisions by federal agencies, and the Court is not aware of any parallel power to review the actions of state or local agencies. *See Hunter*, 362 F.3d at 477 (8th Cir. 2004) (reviewing 42 U.S.C. § 1437 and its implementing regulations and finding "nothing in these provisions that either grants federal agency status to the state [housing] agency or grants federal courts the jurisdiction to review the actions of local public housing agencies.").[5]

---

[4] Plaintiffs also allege a violation of 24 C.F.R. §§ 982.554, but this provision applies to informal review procedures for applicants who have been denied benefits under Section 8, not to participants who have had their benefits terminated. Similarly, Plaintiffs allege a violation of 24 C.F.R. § 966.56, which applies to public housing programs rather than the Section 8 program.

[5] Plaintiffs also allege that the tenant file maintained by defendants is incomplete and inconsistent. Doc. 54 at 11. But they provide no basis for the Court to conclude that this claim establishes a due process or statutory violation.

- 13 -

**IT IS ORDERED** that Defendants' motion for summary judgment (Doc. 87) is **granted.** The Clerk is directed to enter judgment accordingly and terminate this action.

Dated this 16th day of February, 2017.

_____
David G. Campbell
United States District Judge